```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

RODERICK JOHNSON,

        Petitioner,

     -v-                                07-CV-6228(MAT)
                                          **DECISION AND ORDER**

ROBERT KIRKPATRICK, Superintendent,

        Respondent.

## I. Introduction

*Pro se* petitioner Roderick Johnson ("Petitioner") filed this timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of Murder in the Second Degree (N.Y. Penal L. § 125.25[1]; 20.00), entered March 25, 2002, in Monroe County Court, following a jury trial before Judge Frank P. Geraci, Jr.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

Just before noon on Friday, October 6, 2000, Petitioner and co-defendant, Yancy Wearen ("Wearen"), repeatedly shot Felton Henderson ("Henderson" or "the victim"), causing his death, at Ravine Avenue and Tacoma Street in Rochester, New York.

Several eyewitnesses were present at the scene, who provided descriptions of two or three persons they thought had been involved in the shooting. In particular, Devon Burroughs ("Burroughs"), the

victim's brother, testified that he saw Petitioner draw a gun "from the front of him," and aim and fire it at the victim. Burroughs further testified that after the victim was "hit," the victim stumbled to the ground. Burroughs then ran away. T. 835-836.[1]

Reports of a shooting on Tacoma Street, along with a description of three black males and their clothing (one wearing a silver bubble coat, one wearing a red coat, and one wearing a black and red flannel plaid coat with a gold chain and medallion around his neck) was communicated over police radio. Rochester Police Officer Michael Marcano ("Marcano") was working at a truancy center on Backus Street when he observed three black males who matched the broadcast description walking southbound through an open field. Marcano advised the dispatcher that he had three suspects in sight. When Marcano approached the youths, they ran. T. 788-796.

Shortly thereafter, Petitioner and Wearen were apprehended at 41 Phelps Avenue. T. 1039-1041.

At the scene of the shooting, police recovered shell casings from weapons of two different calibers, indicating that two guns were used in the shooting. T. 1086-1087. An autopsy performed on the victim indicated four entrance wounds and one exit wound. Fragments extracted from the victim's body were then sent to the Monroe County Public Safety Laboratory for examination, which

---

[1] Citations to "T.__" refer to pages of the trial transcript. Citations to "S.__" refer to pages of the sentencing transcript. Citations to "P.T.__" refer to pages of the pre-trial transcript.

concluded that the fragments came from separate weapons. T. 1196-1203, 1210-1215.

A jury found Petitioner and Wearen guilty of intentional murder. Petitioner was subsequently sentenced to twenty-five years to life imprisonment. S. 6-8.

Petitioner appealed the judgment of conviction to the Appellate Division, Fourth Department, raising the following issues: (1) that the trial court improperly refused to give a circumstantial evidence charge; (2) ineffective assistance of trial counsel; (3) that the trial court erred in failing to direct the People to disclose, as Brady material, the name of the individual who disposed of the murder weapon; (4) Petitioner's suppression motion should have been granted because he was arrested without probable cause; and (5) insufficiency of the evidence. See Petitioner's Brief on Appeal, Points I-V. Petitioner's judgment of conviction was unanimously affirmed. People v. Johnson, 21 A.D.3d 1395 (4th Dept. 2005); lv. denied, 5 N.Y.3d 883 (2005).

Petitioner brought the instant habeas petition, wherein he seeks relief on the following grounds: (1) that the trial court improperly refused to give a circumstantial evidence charge; (2) ineffective assistance of trial counsel; (3) a Brady violation; and (4) insufficiency of the evidence. See Petition [Pet.] ¶12A-D (Dkt. #1). All of Petitioner's claims are exhausted and properly before the Court.

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable

application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340

(2003).

**B.   Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44, accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).  "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

**IV. Petitioner's Claims**

**1.   Circumstantial Evidence Charge (Ground One)**

Petitioner contends that "the evidence that [he] was responsible for the murder was entirely circumstantial," and therefore the trial court improperly denied his request for a

circumstantial evidence charge. Pet. ¶12A. Petitioner raised this claim on direct appeal, and it was rejected on the merits. The Appellate Division found that the trial court properly refused to give the requested charge because the proof at trial consisted of both circumstantial and direct evidence. See Johnson, 21 A.D.3d at 1395. Petitioner's claim relies entirely on New York law and does not rise to the level of a federal constitutional violation.

It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Before a federal court may overturn a conviction resulting from a state trial in which an erroneous instruction was used, or a properly requested instruction was not given, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v Naughten, 414 U.S. 141, 146 (1975); accord, e.g., Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001).

With regard to the propriety, as a matter of state law, of Petitioner's request for a circumstantial evidence jury charge, such a charge is only required, at the defendant's request, when

the evidence against a defendant is comprised solely of circumstantial evidence. E.g., People v. Daddona, 81 N.Y.2d 990, 992 (1993) ("Whenever a case relies wholly on circumstantial evidence to establish all elements of the charge, the jury should be instructed, in substance, that the evidence must establish guilt to a moral certainty."). However, when the case is also supported by direct evidence, it does not qualify for the circumstantial evidence instruction, and the trial court need not give the "moral certainty" circumstantial evidence standard. Id.; accord People v. Roldan, 88 N.Y.2d 826, 827 (1996) (finding circumstantial evidence charge unwarranted where case against defendant involved both direct and circumstantial evidence of defendant's accessorial guilt).

Here, the trial court properly denied counsel's request for the circumstantial evidence charge because the case against Petitioner was also supported by credible direct evidence provided by Burroughs, the victim's younger brother, who testified that he saw Petitioner draw a gun "from the front of him," aim, and then shoot directly at the victim. T. 835-836, 1243. On this basis alone, the Court cannot find that the trial court improperly denied Petitioner's request for a circumstantial evidence charge as a matter of state law.

In any event, assuming that the trial court's failure to give the circumstantial evidence charge was erroneous, such failure does

not, standing alone, violate Petitioner's right to due process. E.g., Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990). Rather, "[f]or an erroneous state jury charge [or the failure to give an appropriate requested one] to result in a federal constitutional deprivation, 'the ailing instruction by itself [must have] so infected the entire trial that the resulting conviction violates due process.'" Id. (quoting Cupp, 414 U.S. at 147 (alteration in original)). Here, the Court does not discern any basis on the record for finding that the jury would have acquitted Petitioner had it heard the circumstantial evidence charge. As discussed under "Section IV, 4" below, the evidence presented at trial established, beyond a reasonable doubt, that Petitioner intended to cause Henderson's death and that he acted in concert with Wearen in shooting Henderson to death. Therefore, the omission of the charge did not "so infect[] the trial that the resulting conviction violate[s] due process.'" Blazic, 900 F.2d at 543 (quoting Cupp, 414 U.S. at 147).

Since there was no error of state law, and no federal due process violation, there is no basis upon which Petitioner may obtain habeas relief. Accordingly, the claim is dismissed.

**2.  Brady Claim (Ground Three)**

Petitioner alleges that the prosecution failed to provide the defense with exculpatory material in violation of the rule set

forth in Brady v. Maryland, 373 U.S. 83 (1963).[2] Specifically, he claims that the trial court should have compelled the prosecution to provide the name of a confidential informant, who allegedly disposed of the murder weapon for one, Deon Hills ("Hills"),[3] consequently linking Hills to Henderson's murder, and exculpating Petitioner. See Petition ¶12C. The Appellate Division denied Petitioner's claim on the merits, holding that the informant's identity was not relevant to the guilt or innocence of the accused. Johnson, 21 A.D.3d at 1395.

To prove a Brady violation, a habeas petitioner must establish that: 1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding. Moore v. Illinois, 408 U.S. 786, 794-95 (1972); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Evidence is material only if there is a reasonable probability that disclosure of the evidence to the defense would have changed the result of the proceeding. United States v. Bagley, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

---

[2] Brady v. Maryland, 373 U.S. 83 (1963) (suppression by prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution).

[3] This individual was present at the time of the crime, but was never charged in connection therewith.

Id. at 682.

Assuming, *arguendo*, that the confidential informant's identity was disclosed, and that he would have testified at trial, Petitioner contends that his testimony would have established that the informant acquired the gun from Hills, thereby implicating Hills as the second shooter in the murder. Nothing in the record suggests that the informant witnessed the murder or played any role in the crime other than disposing of the weapon.[4] As such, Petitioner has not advanced an argument that establishes that the identity of the informant was material to his defense. See, e.g., Beverly v. Walker, 899 F.Supp. 900, 911 (N.D.N.Y. 1995) (where informant had no first-hand knowledge of facts of the crime for which petitioner was convicted, he could not have provided any testimony material to petitioner's defense).

Accordingly the Court cannot find that the state court's determination of this issue contravened or unreasonably applied settled Supreme Court law. The claim is therefore dismissed.

### 3. Ineffective Assistance of Trial Counsel (Ground Two)

Petitioner alleges that he was deprived of his Sixth Amendment right to the effective assistance of counsel because counsel

---

[4] The Appellate Division found that the informant "played a marginal part in the crime." Johnson, 21 A.D.3d at 1395. This finding of fact is presumed to be correct in the absence of clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e) ("a determination of a factual issue by a State court shall be presumed to be correct" and "the [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

"failed to object, and cross-examine witnesses regarding significant issues, and counsel failed to elicit testimony from [a] witness who used defendant's name while testifying." Pet. ¶12B. Petitioner raised this issue on direct appeal, and it was rejected on the merits. The Appellate Division found that Petitioner "was afforded effective assistance of counsel." Johnson, 21 A.D.3d at 1395 (internal citations omitted).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. The Court finds that Petitioner has failed to

demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

Here, Petitioner has failed to substantiate his claim of ineffective assistance of counsel. The supporting facts upon which he bases this claim are general in nature and not linked to specific facts in the record. He does not indicate what counsel failed to object to, which "significant issues" counsel failed to cross-examine witnesses on, nor does he explain what testimony counsel failed to elicit from one of the prosecution's witnesses (or how this testimony would have assisted his defense). Nonetheless, counsel's perceived "failures," regardless of the lack of specificity with which Petitioner has enumerated them, relate to decisions which fall within the ambit of trial strategy, and, if reasonably made, will not constitute a basis for an ineffective assistance claim. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987).

The record shows that counsel actively participated in voir dire; that counsel delivered an articulate opening statement, setting forth the theory that Petitioner did not fit the description of the culprit and that defendant did not commit the crime; that counsel engaged in thorough direct and cross-examination of witnesses; that counsel consistently objected, as appropriate, throughout the trial; that at the end of the People's case, counsel moved for an order of dismissal; and that counsel

delivered a well-reasoned summation, highlighting the weaknesses in the People's case and the strengths of the defense's case. T. 491-497, 1222-1224, 1246-1270. Overall, the record reflects that Petitioner received competent, meaningful representation at all stages of his trial.

Thus, the Court cannot find that the appellate court unreasonably applied federal law in determining that trial counsel's representation was not constitutionally infirm. The claim is dismissed.

### 4. Legal Sufficiency of the Evidence/Identification (Ground Four)

In ground four of his petition, Petitioner challenges the legal sufficiency of the evidence supporting his conviction for second degree murder under an accomplice liability theory. Specifically, he contends that he was never identified at trial as the second shooter. Pet. ¶12D. Petitioner raised this claim on direct appeal, and it was rejected on the merits. The Appellate Division found that the direct and circumstantial evidence was legally sufficient to support the conviction. Johnson, 21 A.D.3d at 1395.

When a petitioner for habeas corpus challenges the sufficiency of the evidence presented at trial, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson

v. Virginia, 443 U.S. 307, 319 (1979).

Petitioner was charged and convicted of intentional murder, see Penal L. § 125.25[1], under a theory of accomplice liability, see Penal L. § 20.00, which imputes criminal liability for the conduct of another. The following proof was presented at trial: that Petitioner was at the site of the shooting, wearing a red and black plaid flannel coat and long gold chain with a medallion; that there were two shooters, and two types of bullets recovered from the scene of the shooting as well as from the victim's body; and, that various witnesses observed two men, one in a silver puffy coat and one in a red and black plaid flannel coat, shoot the victim multiple times. In the instant case, there was sufficient evidence for a jury to have found that Petitioner intended to cause the victim's death and that he acted in concert with Wearen in shooting the victim to death. See Penal L. §§ 125.25[1], 20.00. Thus, in determining that there was sufficient evidence to support Petitioner's conviction, the Appellate Division's decision was not contrary to, or an unreasonable application of Jackson v. Virigina.

The claim is dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28

U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   March 22, 2010
         Rochester, New York